### KIHCHEL v. UNITED STATES.
#### Civ. No. 9177.

United States District Court
W. D. Pennsylvania.
June 11, 1952.

Fred B. Trescher, Greensburg, Pa., for plaintiff.

Edward C. Boyle, U. S. Atty., Pittsburgh, Pa., and Richard M. Roberts, Sp. Asst. to Atty. Gen., for defendant.

STEWART, District Judge.

This is an action to recover estate taxes paid under protest. The case was tried by the Court without a jury, and upon all the evidence, we make the following

### Findings of Fact

1. During the year 1911, in what is now the City of Jeannette and was then the Borough of Jeannette, Westmoreland County, Pennsylvania, Oliver A. Kihchel, the decedent, and one August Schmidt formed a partnership for the purpose of carrying on the motion picture business in a rented theater under the name of "Eagle Theater."

2. Each of the partners made an original investment of $400 and carried on the business as equal partners until 1917.

3. In 1917, August Schmidt wished to retire from the partnership business. Oliver A. Kihchel and Bessie E. Kihchel, his wife, agreed to buy August Schmidt's interest in the partnership for the sum of $1,500, and entered into a verbal agreement under which they would thereafter be equal partners. Five Hundred Dollars of the $1,500 used to purchase the Schmidt interest was paid by Bessie E. Kihchel and the remaining $1,000 was borrowed by Oliver A. Kihchel from the Peoples National Bank of Jeannette, Pennsylvania.

4. The business expanded and grew, and in the early 1920's, Oliver A. Kihchel and Bessie E. Kihchel leased another theater

known as the Princess Theater, and thereafter carried on business under both names, "Eagle Theater" and "Princess Theater".

5. In the year 1925, Oliver A. Kihchel and Bessie E. Kihchel purchased the premises in which the Princess Theater business was conducted. Title was taken in the name of Oliver A. Kihchel alone for the reason that the parties had been advised by their banker that they could more readily obtain credit if the property was in the name of the husband alone.

6. Part of the purchase price was paid from an account which stood in the name of Bessie E. Kihchel and the balance, $25,000, was evidenced by a bond signed by Bessie E. Kihchel and Oliver A. Kihchel, and secured by a mortgage on the premises which was signed by both Oliver A. Kihchel and Bessie E. Kihchel.

7. From time to time, loans were obtained by Bessie E. Kihchel and Oliver A. Kihchel for business purposes in connection with the Princess Theater, and on each occasion, the notes were signed by both and contained a certification by Bessie E. Kihchel to the effect that she was not signing as surety, guarantor or accomodation endorser, but for the benefit of her own separate estate.

8. In the early 1930's, Bessie E. Kihchel and Oliver A. Kihchel were compelled to give up the Eagle Theater due to business reverses, and thereafter carried on the business solely under the name of "Princess Theater".

9. After Oliver A. Kihchel and Bessie E. Kihchel associated themselves together in business in 1917, two bank accounts were carried—one in the name of "Eagle Theater, Oliver A. Kihchel", upon which both Bessie E. Kihchel and Oliver A. Kihchel were authorized to draw checks, and one in the name of "Bessie E. Kihchel" upon which both parties were authorized to draw checks.

10. Each Saturday night it was the practice of Bessie E. Kihchel and Oliver A. Kihchel to pay some of the expenses of the business from either cash or the Eagle Theater account, to estimate the remaining expenses and earmark an amount to be deposited in the Eagle Theater account to cover these expenses, to give to Oliver A. Kihchel an amount of cash sufficient for his personal needs and to earmark the remaining amount for deposit in the account carried in the name of Bessie E. Kihchel.

11. From the account carried in the name of Bessie E. Kihchel, all of the household expenses and such expenses as clothing and the like for both parties were paid.

12. This practice with reference to division of profits and expenses was continued after the Princess Theater was acquired. In addition, at some time subsequent to the purchase of the Princess Theater and prior to the death of Oliver A. Kihchel, a third account, "Princess Theater Tax Account", was opened. Both parties had the right to draw on this account and only tax monies were deposited therein.

13. In 1945, and prior years, all of the income from the business was reported for income tax purposes on reports filed by Oliver A. Kihchel alone, and on these returns, Oliver A. Kihchel did not report any income as derived from a partnership.

14. In the year 1946, following the death of Oliver A. Kihchel, a partnership return was filed.

15. In the early part of 1946, the parties, Oliver A. Kihchel and Bessie E. Kihchel, signed and swore to an application for registration under the Fictitious Names Act of Pennsylvania setting forth that they were the owners of the Princess Theater, and sent it to the Prothonotary's office for filing. The Prothonotary returned the application to them without filing for the reason that they had failed to make the necessary advertisements. No prior or further effort to register was ever made by these parties.

16. From the time Bessie E. Kihchel associated herself with Oliver A. Kihchel in the conduct of the business, she actively participated in its management and control and both spent about an equal amount of time in the conduct of the business. Her tasks included, at various times, bookkeeping, booking of pictures, selling tickets, cleaning the theater, selling candy and popcorn, paying the employees, and purchasing

equipment and arranging for improvements for the theater building.

17. On an average of once a week, her duties required her to be in Pittsburgh interviewing exhibitors or bookers, ascertaining what pictures were available and the prices at which they could be obtained, and determining what pictures should be booked.

18. Oliver A. Kihchel and Bessie E. Kihchel joined together in making all policy decisions with reference to the conduct of the business, with reference to the acquisition of the theater building, and with reference to the improving of the property from time to time.

19. All of the money which was used to pay the principal on the $25,000 mortgage on the Princess Theater building and to pay large notes which were subsequently executed by both parties from time to time to make improvements thereon and all the money paid for the purchase of the Princess Theater business was paid from the account carried in the name of Bessie E. Kihchel alone.

20. On occasions when there were losses and when the income from the business was not sufficient to pay ordinary operating expenses, Mrs. Kihchel paid from the account standing in her name alone the wages of the moving picture operators and other employees, and such other expenses as could not be met from the income from the business.

21. Virtually all checks from all accounts used in connection with the business were drawn and signed by Bessie E. Kihchel.

22. In 1917 when Bessie E. Kihchel and Oliver A. Kihchel purchased August Schmidt's interest in the Eagle Theater, they did intend, in good faith, to enter into a partnership agreement whereby they would each be equal partners, and they did, at that time, create a partnership relation.

23. This partnership continued from that time until the death of Oliver A. Kihchel on September 3, 1946.

24. At the time of the death of Oliver A. Kihchel, the business carried on under the name of "Princess Theater", including real estate, bank accounts, equipment, etc. had a clear value of $64,528.59.

25. After the death of Oliver A. Kihchel, Bessie E. Kihchel, as executrix of his estate, reported the sum of $32,264.29, or one-half of the total, as the value of the decedent's interest in the business.

26. The Commissioner of Internal Revenue, notwithstanding the protest of the plaintiff, determined that the business was not owned and operated by the decedent and Bessie E. Kihchel as equal partners, but that it was owned and operated by the decedent, Oliver A. Kihchel, individually or as a sole proprietorship, and assessed an estate tax based on the full value of the business.

27. The decedent, Oliver A. Kihchel, and Bessie E. Kihchel, at the time of the death of Oliver A. Kihchel, were possessed of United States Savings Bonds Series E, in the amount of $4,163.50; the bonds were issued and registered in the names of Oliver A. Kihchel and Bessie E. Kihchel, and at the time of the death of Oliver A. Kihchel were in a safe deposit box in the Glass City Bank, Jeannette, Pennsylvania, held jointly by Oliver A. Kihchel and Bessie E. Kihchel; they were paid for in part from funds which had been sent to Bessie E. Kihchel by one of her sons who was serving overseas in the United States Army, and in part from funds earned by Bessie E. Kihchel from the sale of candy in the theater.

28. After the death of Oliver A. Kihchel, Bessie E. Kihchel, as executrix of his estate, reported one-half the value of the bonds or $2,081.75, as the property of the decedent, Oliver A. Kihchel. The Commissioner of Internal Revenue, notwithstanding the protest of Bessie E. Kihchel, determined that she had not contributed one-half the purchase price of the bonds and determined that the entire value thereof, $4,163.50, should be included in the decedent's gross estate.

29. Following these determinations, the plaintiff, Bessie E. Kihchel, Executrix of the Estate of Oliver A. Kihchel, on April 28, 1950, paid the additional tax assessed on the partnership property and on the bonds under protest, and filed with the Commis-

sioner, on the same date, on Form 843, a claim for refund of the sum of $5,435.27, being the amount of the estate tax deficiency together with interest thereon.

30. The Commissioner of Internal Revenue, on September 15, 1950, disallowed the claim.

### Conclusions of Law

1. This matter arises under the Internal Revenue Laws of the United States and this Court has jurisdiction under Section 1340 of Title 28 of the United States Code.

2. Section 811(a) of Title 26 of the United States Code provides that

> "The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States—

> "(a) *Decedent's interest.* To the extent of the interest therein of the decedent at the time of his death".

■ 3. The test to be applied in determining whether a partnership exists for tax purposes is "whether, considering all the facts—the agreement, the conduct of the parties in execution of its provisions, their statements, the testimony of disinterested persons, the relationship of the parties, their respective abilities and capital contributions, the actual control of income and the purposes for which it is used, and any other facts throwing light on their true intent—the parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise": Commissioner of Internal Revenue v. Cul-

bertson, 1949, 337 U.S. 733 at page 742, 69 S.Ct. 1210, 1214, 93 L.Ed. 1659.

■ 4. Applying this test to the evidence in this case, we found, as a fact, that Bessie E. Kihchel and Oliver A. Kihchel intended, in good faith, to enter into a partnership agreement.

5. At the time of the death of Oliver A. Kihchel, a partnership existed composed of Bessie E. Kihchel and Oliver A. Kihchel in which each had an equal interest.

6. The interest of the decedent in the partnership at the date of his death had a value of $32,264.29.

7. The Government concedes that if, in fact, a partnership existed, then only one-half of the value of the bonds in question, being an amount of $2,081.75, should have been included in determining the gross estate of the decedent for estate tax purposes.

■ 8. Therefore, Bessie E. Kihchel correctly reported one-half the value of the business ($32,264.29) carried on under the name of "Princess Theater" as the value of the interest of the decedent, Oliver A. Kihchel, and correctly reported one-half the value of the bonds ($2,081.75) as the value of the interest of the decedent, Oliver A. Kihchel, therein, and the Commissioner of Internal Revenue erred in determining that the business and the bonds were the sole property of Oliver A. Kihchel.

9. The plaintiff, Bessie E. Kihchel, Executrix of the Estate of Oliver A. Kihchel, is entitled to judgment in the amount of $5,435.27 with interest thereon from April 28, 1950, and, accordingly, an order directing the entry of judgment in that amount will be filed.